1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW CARNES, Individually and on Behalf of All Others Similarly Situated,

             Plaintiff,

   v.

DEXCOM INC., KEVIN R. SAYER, and JEREME M. SYLVAIN,

             Defendants.

Case No.   **'24 CV 1809 RBM DDL**

CLASS ACTION

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

DEMAND FOR JURY TRIAL

Plaintiff Matthew Carnes ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to her own acts, and upon facts obtained through an investigation conducted by her counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by DexCom, Inc. ("DexCom" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of DexCom's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all investors who (i) purchased or otherwise acquired DexCom securities between January 8, 2024 to July 25, 2024, inclusive (the "Class Period") and (ii) sold DexCom put option contracts during the Class Period, seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.     Defendants provided investors with material information concerning DexCom's expected revenue for the fiscal year 2024. Defendants' statements included, among other things, confidence in the DexCom's ability to capitalize on its growth potential to reach the projected record number of new patients and simultaneously outpace the prior fiscal year's gross margins, while scaling customer conversion to the new G7 platform.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

3.      Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts concerning the true state of DexCom's salesforce; notably, that it was not truly equipped to execute on the Company's perceived growth potential. Such statements absent these material facts caused Plaintiff and other shareholders to purchase DexCom's securities at artificially inflated prices.

4.      On July 25, 2024, Dexcom announced its financial results for the second quarter of fiscal 2024 and reduced its revenue guidance for the full fiscal year 2024. The Company attributed its results and lowered guidance on their execution of "several key strategic initiatives" which "did not meet [their] high standards." Investors and analysts reacted immediately to DexCom's revelation. The price of DexCom's common stock declined dramatically. From a closing market price of $107.85 per share on July 25, 2024, DexCom's stock price fell to $64.00 per share on July 26, 2024, a decline of about 40.66% in the span of just a single day.

## JURISDICTION AND VENUE

5.      Plaintiff brings this action, on behalf of herself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

6.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

8.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant DexCom is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

10.     Plaintiff purchased DexCom securities during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in DexCom is attached hereto.

11.     DexCom, Inc. is a California corporation with its principal executive offices located at 6340 Sequence Drive, San Diego, CA 92121-4356. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "DXCM."

12.     Defendant Kevin R. Sayer ("Sayer") was, at all relevant times, the Executive Chairman, Chief Executive Officer, and President of DexCom.

13.     Defendant Jereme M. Sylvain ("Sylvain") was, at all relevant times, the Executive Vice President, Chief Financial Officer, and Chief Accounting Officer of DexCom.

14.     Defendants Sayer and Sylvain are sometimes referred to herein as the "Individual Defendants." DexCom together with the Individual Defendants are referred to herein as the "Defendants."

15.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of DexCom's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information n available

3

to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

16.   DexCom is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

17.   The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to DexCom under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### A.   Company Background

18.   DexCom is an international company that develops, manufactures, and distributes continuous glucose monitoring systems for diabetes management.

19.   DexCom's G7 continuous glucose monitoring system, designed and distributed as an upgrade over the prior G6 model, was launched in early 2023.

### B.   The Defendants Materially Misled Investors Concerning DexCom's Revenue Outlook for Fiscal Year 2024

*January 8, 2024*

20.   On January 8, 2024, Defendants issued a press release announcing preliminary results for Q4 and the full year 2023, as well as first publishing their fiscal 2024 guidance, expecting "total revenue of approximately $4.15 billion to $4.35 billion, representing expected organic growth of approximately 16% to 21% over 2023."

21.     The same day, during the Company's presentation at the J.P. Morgan 42nd Annual Healthcare Conference 2024, DexCom's Executive VP, CFO, and CAO, Jereme M. Sylvain elaborated on their justifications for the guidance during the question-and-answer period, stating, in pertinent part:

<Q: Robert Justin Marcus – JPMorgan Chase & Co. – Analyst> All right. I want to shift the focus a little bit forward. And you gave 2024 guidance today, 16% to 21% sales growth year-over-year, 63% to 64% gross margin and about a 20% operating margin. So really healthy metrics down the P&L sales, a little above at the upper end where the Street is, operating margin above where the Street is. Maybe just talk about, one, what's incorporated at the low and the high end of the sales guidance range, what's in the gross margin that came just a hair below where consensus was. And then operating margin, you're clearly getting good OpEx leverage, again, what's in there?

<A: Jereme M. Sylvain> Yes. So I think when you think about guidance, there's a couple of different things in there. So first and foremost, what is now excluded in that number, the raw top line number is our non-CGM business, with the expectation that, that comes out of the business. So there is an assumption there.

***In terms of that growth, it does assume another year of record new patients. So I think global record new patients***. I think you can presume that there it does, when Kevin said a modest contribution from our non-insulin product, our 15-day product, we assume about 1 point of revenue associated with that. So that gives you some context around that.

And the rest is healthy growth really across the board in basal and the intensive population globally. ***As you move down the line, you think about gross margin, if you rewind back to 2023, we really started 2023 with a 62% to 63% gross margin, and we're going to outpace that this year***. Some of that is just due to the timing of transition from G6 to G7. So Kevin alluded to it earlier. The expectation is, as we move through that transition, there's a little bit of that. So some of that's embedded. It doesn't change our long-term plans. Ultimately, we are on track for the cost profile we would expect on G7 at $10 sensor. And I would expect us to continue to make progress.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

There is no 15-day intensive insulin or G-Series product assumptions on gross margin in there. So hopefully, that's a little bit helpful. And then the continuation of leverage through the P&L, I think you'd expect to continue to see us do that. ***We had a really strong year in 2022, 2023 in terms of driving leverage. That leverage continues as we move into 2024.***

(Emphasis added).

<u>February 8, 2024</u>

22.     On February 8, 2024, Defendants published their final results for Q4 and the full year 2023, upholding their guidance published the month prior.

23.     During the same-day earnings call, CFO Sylvain stated, in pertinent part:

Turning to 2024 guidance. As we stated last month, we anticipate total revenue to be in the range of $4.15 billion to $4.35 billion, representing organic growth of 16% to 21% for the year. This guidance assumes continued momentum in the type 2 basal-only population in the U.S., the expansion of Dexcom ONE on the G7 platform into new geographies, and the launch of Stelo in the summer of 2024. It also assumes the divestiture of our non-diabetes distribution business in Australia and New Zealand this quarter, which represented around $30 million of revenue in 2023.

From a margin perspective, we expect full year non-GAAP gross profit margin to be in a range of 63% to 64%, operating profit margin to be approximately 20%, and adjusted EBITDA of approximately 29%. ***Our gross margin guidance reflects the ongoing conversion from G6 to G7 within our customer base and the associated scale that comes with that process.*** Below gross margin, we'll continue to be very diligent with our spend in 2024, while investing strategically behind multiple growth opportunities.

<u>March 5, 2024</u>

24.     On March 5, 2024, Defendants presented at the 45th Annual Raymond James Institutional Investors Conference 2024.

25.     During the presentation, Defendants again reiterated their annual guidance, focusing on their faith in the G7 product.  In pertinent part, DexCom's Director of Corporate Affairs and Head of Investor Relations, Sean Christensen, stated the following:

> For 2024, we expect this significant growth to continue. We've guided our top line growth for the year to 16% to 21% organic growth. Gross margin for the year is 63% to 64%, which is relatively flat, slightly down versus 2023. ***Really, we're in the process of transitioning from our G6 hardware platform to our G7. And so as we build volumes, that will help us to scale and drive greater margin efficiency at the gross margin level***, continued operating margin expansion to about 20% and adjusted EBITDA margin of 29% forecast for this year. You see some of the assumptions there. But I think for us, this is a year in which we build on the access expansion that we had last year and continue to capitalize both within the U.S. and internationally.
>
> If you think about then how do we execute on this vision and the strong growth opportunity, it really starts with an excellent product, and that's what we have in G7. With DexCom G7, we have what we believe to be new standard in CGM technology around the world. G7 is the most accurate CGM that has been cleared by the FDA and offering that standard DexCom performance that people have come to expect and trust over the years
>
> . . .
>
> And DexCom CGM with G7 is also the most covered CGM in the U.S. We fought incredibly hard to ensure that our patients not only have access to the technology, but have as low of an out-of-pocket cost as possible, given that they rely on this for managing a complex condition. And in doing so, we've been able to really expand our coverage and lead the industry with robust coverage. But we're not sitting still on DexCom G7. We continue to expand and innovate. And so we've talked about expanding the sensor wear from the current 10.5 day to what we hope will be a 15-day sensor wear. That has entered kind of the clinical testing phase that we talked about last year when we introduced these enhancements to the G7 platform at our Investor Day, so we continue to build. And obviously, that would be a nice benefit for our users and

certainly for us from a cost perspective, if we can move from a 3 sensor per month to 2 sensor per month dynamic.

We also continue to make sure that we're driving the most volume to our G7 platform so that we can get the most out of the automated lines and manufacturing scale that we've built out in our San Diego, Mesa, Arizona and Malaysia manufacturing facilities.

*April 25, 2024*

26.     On April 25, 2024, Defendants issued a press release publishing their Q1 FY24 results and positively updated their full-year 2024 guidance, wherein Executive Chairman, CEO, and President Kevin R. Sayer stated the following:

Dexcom is off to a great start in 2024, delivering another quarter of strong financial results while advancing several key strategic initiatives . . . This is shaping up to be another exciting year for Dexcom as we launch new product innovations and work to improve access to Dexcom CGM around the world.

27.     During the same-day earnings call, CFO Sylvain detailed the Company's FY24 guidance adjustment, stating, in pertinent part:

Turning to guidance. ***We are raising the midpoint of our revenue guidance with an updated range of $4.20 billion to $4.35 billion, representing organic growth of 17% to 21% for the year***. ***For margins, we are reaffirming our prior full year guidance*** of non-GAAP gross profit margin in a range of 63% to 64%, non-GAAP operating margin of approximately 20% and adjusted EBITDA margin of approximately 29%.

(Emphasis added).

28.     A question-and-answer period followed where CFO Sylvain elaborated specifically on the lack of a corresponding increase to the Company's projected gross margin, stating, in pertinent part:

<Q: Robert Justin Marcus – JPMorgan Chase & Co. – Analyst> Congrats on a nice quarter. I wanted to talk about the leverage we saw down the P&L. It was pretty impressive. It will be by like 150 bps on

8

operating margin. So just wanted to see how we should think about gross margin progression, operating margin progression throughout the year, I saw the reiterated guidance but just trying to think about cadence, especially in light of the Stelo launch and the key drivers of that upside in the quarter and how we should think about that moving through the year?

<A: Jereme M. Sylvain> Yes. Sure, Robbie. Thanks for the question. **The way to think about gross margin and is that of course over the course of the year, we talked -- when we set guidance that this was going to look a little bit like a more typical year. And in a more typical year, you generally see 300 to 400 basis points of expansion over the course of the year. And that's what I'd expect to see over the course of this year.**

A lot happened last year with the transition from G6 to G7. It's not a typical year. We had a new manufacturing facility coming online. But as you kind of go back into years prior to that, you see that sort of cadence. That's how we're thinking about it, at least over the course of the year right now. And so that gives you some context for that cadence from an op margin perspective or at least an OpEx spend perspective, we've already made the investment in the sales force. And so that you see playing through in the first quarter. And to your point, you saw some nice leverage in the first quarter.

We will be making investments, further investments in Japan here as we go live in the second quarter, and that will play out over the course of the year. And then obviously, associated with the launch of Stelo over the course of the summer, we'll be making investments there. So while we won't get the same leverage that you ultimately saw in the first quarter over the balance of the year. You should expect some leverage over the course of the year, and that ultimately contributes down to what you'd see as an expansion of op margin despite a gross margin guide, that's about a bit of a click back from the prior year. So that's the way to think about it.

In terms of the over performance in the Q1, I think you're alluding to the beat in terms of op margin. I think the takeaway here is it's an encouraging sign for us. **We've demonstrated over the past few years, we can drive leverage into this business. This year is no exception.** All of the efforts that we've been talking about in prior years continue.

9

However, it's a little early to change how we're thinking about the full year first quarter. And as you mentioned, a nice start to the first quarter, and we'll keep you updated on progress as the year progresses.

(Emphasis added).

<u>*June 5, 2024*</u>

29.     On June 5, 2024, Defendants spoke further on their updated guidance at the 44th Annual William Blair Growth Stock Conference.  Specifically, during the question-and-answer period, CFO Sylvain was asked to elaborate on the second quarter's progress with respect to the full-year guidance:

<Q: Malgorzata Maria Kaczor Andrew – William Blair & Company LLC – Partner & Research Analyst> And so maybe just to wrap all of that up, as we think about your guidance both for the second quarter, you did have some comments, maybe you're not specific as much for guidance for Q2. But walk us through what you said on Q2, full year and what was contemplated in that? And then third piece, how does that compare to the Street estimates and whether you're comfortable with that?

<A: Jereme M. Sylvain> Sure. Yes. I think last time we spoke, the question was how you think about the estimates in Q2. We don't guide the quarters. So we said things are reasonable. I think it's a reasonable outcome. ***And in terms of the full year, as of the last quarter, when we issued our earnings, we raised our guidance***. And so that should give -- ***we obviously beat the Street expectations in the first quarter, raised guidance and continue to do well***. So I think from that point of view, ***I think we're happy with where we are. We're happy with our full year guidance.*** We don't guide to the quarters, but we were very comfortable with where folks are sitting for the quarter.

(Emphasis added).

30.     The above statements in Paragraphs 20 to 29 were false and/or materially misleading. Defendants created the false impression that they possessed reliable information pertaining to the Company's projected revenue outlook and anticipated growth while also minimizing risk from seasonality and macroeconomic

fluctuations. In truth, DexCom's optimistic reports of growth, earnings potential, and anticipated margins fell short of reality as they relied far too heavily on the Company's ability to attract new customers while keeping existing distribution channels afloat. DexCom was simply not equipped to execute on their perceived growth potential.

**C.      The Truth Emerges during DexCom's Second Quarter Earnings Report**

*July 25, 2024*

31.      On July 25, 2024, Defendants released their Q2FY24 results below expectations and lowered FY24 projections as follows:

Second Quarter 2024 Financial Highlights:

- Revenue grew 15% year-over-year to $1.004 billion on a reported basis and 16% year-over-year on an organic basis.
- U.S. revenue grew 19% and international revenue grew 7% on a reported basis and 10% on an organic basis, all on a year-over-year basis.
- GAAP operating income of $158.0 million or 15.7% of revenue, an increase of 100 basis points compared to the second quarter of 2023. Non-GAAP operating income of $195.4 million or 19.5% of reported revenue, an increase of 130 basis points compared to the second quarter of 2023

. . .

Third Quarter and 2024 Annual Guidance and $750 Million Share Repurchase Program

. . .

- Revenue of approximately $4.00 - 4.05 billion (11 - 13% organic growth)
- Non-GAAP Gross Profit Margin of approximately 63%
- Non-GAAP Operating Margin of approximately 20%
- Adjusted EBITDA Margin of approximately 29%

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

> In addition, to account for certain unique items impacting 2024 seasonality, the company is establishing guidance for third quarter 2024 Revenue of approximately $975 million to $1.00 billion (1 - 3% organic growth).
>
> The company also announced a $750 million share repurchase program in conjunction with second quarter results.

32.     Acknowledging the setback, CEO Sayer stated: "While Dexcom advanced several key strategic initiatives in the second quarter, our execution did not meet our high standards."

33.     During the same-day earnings call, CEO Sayer further elaborated on the Q2 issues that resulted in the missed projections and guide-down, pertinently stating:

> First, as we've worked through our U.S. sales force realignment expansion, **we have seen our share of new customers fall short of our expectations** despite still strong absolute customer additions. Second, **our U.S. revenue per customer has stepped down faster than expected** based on 2 primary drivers: rebate eligibility and channel mix
>
> . . .
>
> U.S. customer growth has remained strong in our pharmacy business as we expand our reach into primary care and type 2 diabetes more broadly. **However, our growth in the DME channel has trailed our plan. The DME distributors remain important partners for us in our business, and we've not executed well this quarter against these partnerships. We need to refocus on those relationships.**
>
> Finally, **our international performance was also lighter than expectations in the quarter**. While we delivered strong performance in some of our core markets such as the U.K. and France, we saw category growth soften in certain geographies as type 1 penetration advances in these regions.

(Emphasis added).

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34.     While elaborating on the Company's reduced full-year guidance for 2024, Executive VP, CFO, and Chief Accounting Officer Jereme M. Sylvain reiterated these issues, stating, in pertinent part:

> Turning to guidance. Starting with full year 2024, we are decreasing our revenue guidance to a range of $4.00 billion to $4.05 billion, representing organic growth of 11% to 13% for the year. As mentioned earlier, ***the compounding effect of our slower-than-expected new customer growth in the U.S. DME channel and international business as well as increased pharmacy eligibility resulted in the need to recalibrate the guide. Our updated guidance reflects these dynamics and assumes a longer ramp in productivity in our U.S. sales force***. For margins, we are reducing our non-GAAP gross profit margin guidance to approximately 63%, while maintaining our prior guidance on non-GAAP operating margin and adjusted EBITDA at approximately 20% and 29%, respectively.
>
> In addition to our annual guidance, we are providing 2 additional data points to help investors and analysts understand some of the unique elements impacting our revised guidance in 2024. First, the impact to new patients from our sales force initiative combined with our revenue per customer trends that Kevin detailed will change the historical seasonality pattern that we have typically experienced. These impacts are expected to reach their peak in the third quarter, with total revenue expected to be between $975 million and $1 billion. In conjunction with this revenue outlook, we thought it would be helpful to provide a midyear update on our global active customer base, which we now estimate to be between 2.5 million and 2.6 million. This represents strong growth over where we finished 2023, though the growth percentage has decelerated slightly. Our hope is these updates will provide additional visibility as our team works to implement several of the areas of focus that we have aligned on over the past month and as our sales force continues to ramp their efficiency

(Emphasis added).

35.     The aforementioned press releases and statements made by the Individual Defendants are in direct contrast to statements they made during the February 8, March 5, April 25, and June 5, 2024 earnings and shareholder calls. On

13

those calls, Defendants continually praised their alleged growth, foreseeing record numbers of new patients and outpacing their prior fiscal year's gross margins, while continually minimizing the risks associated with scaling their customer transition to the G7 platform, as well as those associated with seasonality and the potential impact of the macroeconomic environment on the Company's profitability.

36.     Investors and analysts reacted immediately to DexCom's revelation. The price of DexCom's common stock declined dramatically. From a closing market price of $107.85 per share on July 25, 2024, DexCom's stock price fell to $64.00 per share on July 26, 2024, a decline of about 40.66% in the span of just a single day.

37.     A number of well-known analysts who had been following DexCom lowered their price targets in response to DexCom's disclosures. For example, J.P. Morgan, while dropping their "overweight" rating to neutral and cutting their price target nearly in half, noted that "[t]here's no getting away from the fact that this Thursday's update was a sharp turn in the wrong direction for Dexcom.  The number of dynamics that contributed to the shortfall is significant."  Ultimately, the analyst concluded that "[w]hile we still walked away from earnings with some unanswered questions, we feel very confident that this is due to multiple self-inflicted issues rather than a market growth issue."

38.     Similarly, William Blair highlighted their belief that "the reasons for the miss and guide down are (painfully) self-inflicted."

39.     The fact that these analysts, and others, discussed DexCom's shortfall and below-expectation projections suggests the public placed significant weight on DexCom's prior revenue and sales estimates. The frequent, in-depth discussion of DexCom's guidance confirms that Defendants' statements during the Class Period were material.

### D.     Loss Causation and Economic Loss

40.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of DexCom's common stock and operated as a fraud or deceit on Class Period purchasers of DexCom's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of DexCom's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of DexCom's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

41.     DexCom's stock price fell in response to the corrective event on July 25, 2024, as alleged *supra*. On July 25, 2024, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning DexCom's forecasting processes and growth guidance.

42.     In particular, on July 25, 2024, DexCom announced results for the second quarter of fiscal year 2024 below expectations and further reduced their own prior guidance for fiscal year by more than significantly below-market growth expectations, reducing their own prior revenue guidance for fiscal year 2024 by more than 6%.

**E.     Presumption of Reliance; Fraud-On-The-Market**

43.     At all relevant times, the market for DexCom's common stock was an efficient market for the following reasons, among others:

(a)     DexCom's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)     DexCom communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public

disclosures, such as communications with the financial press and other similar reporting services;

(c)     DexCom was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about DexCom was reflected in and incorporated into the Company's stock price during the Class Period.

44.     As a result of the foregoing, the market for DexCom's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in DexCom's stock price. Under these circumstances, all purchasers of DexCom's common stock during the Class Period suffered similar injury through their purchase of DexCom's common stock at artificially inflated prices, and a presumption of reliance applies.

45.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**F.     No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with revenue projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales

1    and/or adequately disclose the fact that the Company at the current time did not have

2    adequate forecasting processes.

3        47.    To the extent certain of the statements alleged to be misleading or

4    inaccurate may be characterized as forward looking, they were not identified as

5    "forward-looking statements" when made and there were no meaningful cautionary

6    statements identifying important factors that could cause actual results to differ

7    materially from those in the purportedly forward-looking statements.

8        48.    Defendants are also liable for any false or misleading "forward-looking

9    statements" pleaded because, at the time each "forward-looking statement" was

10   made, the speaker knew the "forward-looking statement" was false or misleading

11   and the "forward-looking statement" was authorized and/or approved by an

12   executive officer of DexCom who knew that the "forward-looking statement" was

13   false. Alternatively, none of the historic or present-tense statements made by

14   Defendants were assumptions underlying or relating to any plan, projection, or

15   statement of future economic performance, as they were not stated to be such

16   assumptions underlying or relating to any projection or statement of future economic

17   performance when made, nor were any of the projections or forecasts made by the

18   defendants expressly related to or stated to be dependent on those historic or present-

19   tense statements when made.

20                        **CLASS ACTION ALLEGATIONS**

21       49.    Plaintiff brings this action as a class action pursuant to Federal Rule of

22   Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

23   purchased or otherwise acquired DexCom's common stock during the Class Period

24   (the "Class"); and were damaged upon the revelation of the alleged corrective

25   disclosure. Excluded from the Class are defendants herein, the officers and directors

26   of the Company, at all relevant times, members of their immediate families and their

27   legal representatives, heirs, successors or assigns and any entity in which defendants

28   have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, DexCom's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by DexCom or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of July 18, 2024, there were 400 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of DexCom;

(c)     whether the Individual Defendants caused DexCom to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of DexCom's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of*
### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of DexCom common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire DexCom's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for DexCom's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

59. By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of DexCom's internal affairs.

61.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to DexCom's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of DexCom's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired DexCom's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, DexCom's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of DexCom's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases

21

and/or acquisitions by Plaintiff and the Class, the true value of DexCom's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of DexCom's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants*
### *for Violations of Section 20(a) of the Exchange Act*

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about DexCom's misstatements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by DexCom which had become materially false or misleading.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which DexCom disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause DexCom to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of DexCom's common stock.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause DexCom to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants and/or DexCom are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

     C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

     D.     Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

     Plaintiff hereby demands a trial by jury.


Dated: October 9, 2024           Respectfully submitted,

**LEVI & KORSINSKY LLP**

 /s/ Adam Apton
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com

*Counsel for Plaintiff*

24
